IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CAROL MEYERS,                         §
                                      §
                    Plaintiff,        §
                                      §  Civil Action No. 3:09-CV-1402-D
VS.                                   §
                                      §
TEXAS HEALTH RESOURCES, et al.,       §
                                      §
                    Defendants.       §

MEMORANDUM OPINION
AND ORDER

Plaintiff's motion to remand and defendants' motion to dismiss present questions concerning ERISA[1] preemption. For the reasons that follow, the court denies plaintiff's motion to remand, grants defendants' motion to dismiss, and grants plaintiff leave to amend to state claims under ERISA § 502(a)(1)(B).

I

Plaintiff Carol Meyers ("Meyers") alleges that she was wrongfully denied severance pay by her former employer, defendants Texas Health Resources and Harris Methodist Southwest d/b/a Harris Methodist Southwest Hospital (collectively, "Texas Health"). Texas Health informed Meyers that her position was being eliminated and that she would be laid off. Accompanying the notice was a summary of the "Texas Health Separation Pay Plan" (the "Plan"), which explained, *inter alia*, that laid-off employees were eligible for severance benefits if they actively pursued other available

---

[1]Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461.

positions within Texas Health during a 60-day "notice period" following the layoff announcement.

Meyers informed Texas Health that she was resigning her position prior to the termination date.  Texas Health, in turn, denied her request for severance pay,[2] asserting that she had refused to pursue other open positions and therefore had failed to comply with the Plan.  Meyers objected, asserting that she had pursued available positions before resigning but was unable to find a suitable alternative.  The parties could not agree on whether Meyers was entitled to Plan benefits.

Meyers sued Texas Health in Texas state court, alleging state-law claims for breach of contract, fraud, detrimental reliance, and promissory estoppel, all stemming from Texas Health's refusal to pay severance benefits.  Texas Health removed the case to this court, arguing that the Plan is governed by ERISA and thus Meyers' state-law claims are preempted.  It then moved to dismiss under Fed. R. Civ. P. 12(b)(6).  The court *sua sponte* ordered Texas Health to present additional briefing on the preemption issue, because its notice of removal failed to adequately distinguish between the two types of ERISA preemption, which, in turn, affected whether the court had removal jurisdiction.[3]  Meyers then filed a

_____

[2]Myers sought separation pay in the amount of $43,826.41, or 50% of her annual salary.

[3]As discussed below, "complete" preemption under ERISA recasts a plaintiff's state-law claims as federal causes of action and is

motion to remand.

II

The court first considers Meyers' motion to remand, which turns on whether the court has removal jurisdiction based on complete preemption under ERISA.  Meyers contends that the case must be remanded because Texas Health has not established that her claims are completely preempted.

A

As the removing party, Texas Health "has the burden of overcoming an initial presumption against jurisdiction and establishing that removal is proper." *Carnes v. Data Return, LLC*, 2005 WL 265167, at *1 (N.D. Tex. Feb. 1, 2005) (Fitzwater, J.). "In general, defendants may remove a civil action if a federal court would have had original jurisdiction." *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995) (citing 28 U.S.C. § 1441(a)).  "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which (a federal) statute has defined." *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 212 (1971) (quoting *Healy v. Ratta*, 292 U.S. 263, 270 (1934)).  "The federal removal statute, 28 U.S.C. § 1441 (1997), is subject to strict construction because a

necessary for the court to have removal jurisdiction.  Mere "conflict" preemption simply acts as an affirmative defense to the state-law claims and does not confer removal jurisdiction.

defendant's use of that statute deprives a state court of a case properly before it and thereby implicates important federalism concerns." *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997). "[D]oubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

B

Because Meyers' state-court petition does not assert claims under federal law, and because the parties are not diverse citizens, Texas Health can establish removal jurisdiction only if ERISA completely preempts one or more of Meyers' claims. *See, e.g., Westfall v. Bevan*, 2009 WL 111577, at *2 (N.D. Tex. Jan. 15, 2009) (Fitzwater, C.J.). Ordinarily, "[r]emoval is not possible unless the plaintiff's 'well pleaded complaint' raises issues of federal law sufficient to support federal question jurisdiction." *Rodriguez v. Pacificare of Tex.*, Inc., 980 F.2d 1014, 1017 (5th Cir. 1993) (citing *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149 (1908)). "There is an exception to the well-pleaded complaint rule, though, if Congress 'so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" *Arana v. Ochsner Health Plan*, 338 F.3d 433, 437 (5th Cir. 2003) (en banc) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987)). It is well established that ERISA is such a statute. *See Aetna Health*

*Inc. v. Davila*, 542 U.S. 200, 207-08 (2004). "Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.* at 209.

Under ERISA, there are two types of preemption. "Complete preemption" arises under ERISA § 502—the statute's civil-enforcement provision.[4]  A state-law claim that is completely preempted by § 502 is transformed into a new federal claim under that section, and thereby gives a federal court subject matter jurisdiction over the claim as a federal question. *See Aetna Health*, 542 U.S. at 207-08.  It is well established that Congress intended ERISA to fully occupy the field of disputes involving employee welfare benefit plans. *See Westfall*, 2009 WL 111577, at *3.  Therefore, "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." *Aetna Health*, 542 U.S. at 210.  "Put simply, there is complete preemption

---

[4]The pertinent section in this case is § 502(a)(1)(B), which preempts all suits involving ERISA-governed plans "brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

jurisdiction over a claim that seeks relief 'within the scope of the civil enforcement provisions of § 502(a).' *Arana*, 338 F.3d at 440 (quoting *Metro. Life Ins.*, 481 U.S. at 66). Furthermore, "Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court." *Metro. Life. Ins.*, 481 U.S. at 66.

The other form of ERISA preemption, "conflict preemption," arises under ERISA § 514. Section 514 provides that "the provisions of this subchapter . . . shall supersede any and all State laws insofar as then may now or hereafter relate to any [ERISA] plan[.]" 29 U.S.C. § 1144(a). "Conflict preemption, also known as ordinary preemption, arises when a federal law conflicts with state law, thus providing a federal defense to a state law claim, but does not completely preempt the field of state law so as to transform a state law claim into a federal claim." *Arana*, 338 F.3d at 439. Preemption of state-law claims under § 514 "provides an affirmative federal defense to a state-law claim." *Westfall*, 2009 WL 111577, at *4 (citing *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999)). Thus if state-law claims "relate to" an ERISA plan——whether asserted in state or federal court——ERISA supersedes state law and the claims must be dismissed. *See, e.g., Menchaca v. CNA Group Life Assurance Co.*, 331 Fed. Appx. 298, 304 (5th Cir. 2009) (per curiam) (upholding dismissal of state-law claims based on § 514 preemption).

Thus while both conflict preemption and complete preemption displace state-law claims, they result in different outcomes. Conflict preemption under § 514 is a defense and leads to the dismissal of the state-law claim.  Complete preemption under § 502 also results in dismissal of the state-law claim, but it recasts the state claim as a federal claim.  *See Cardona v. Life Ins. Co. of N. Am.*, 2009 WL 3199217, at *4 (N.D. Tex. Oct. 7, 2009) (Fitzwater, C.J.).  A claim that is completely preempted is removable, although framed as a state-law cause of action, because it is necessarily federal in character.

C

To decide whether at least one of Meyers' state-law claims is completely preempted, the court must first determine whether the Plan is an ERISA employee welfare benefit plan.

1

"Whether ERISA preemption applies regarding a particular insurance policy depends on whether the policy is properly classified as an employee welfare benefit plan under the terms of the statute." *Magallon-Laffey v. Sun Life Assurance Co. of Canada*, 2001 WL 1082414, at *2 (N.D. Tex. Aug. 28, 2001) (Fitzwater, J.). Texas Health attached a copy of the Plan to its motion to dismiss, along with copies of pre-suit correspondence between Meyers and Texas Health discussing the Plan and whether Meyers was eligible for severance pay.  The Plan contains guidelines for determining

employees' eligibility for severance pay as well as the methods for calculating the appropriate amount for qualifying individuals.  It states that "Texas Health Resources, as Primary Employer, and all participating Employers intend that this Plan shall be a welfare plan subject to [ERISA], as amended."  Ds. Aug. 5, 2009 App. 3.[5]

It is not clear whether Meyers disputes Texas Health's characterization of the Plan as an ERISA plan.  She states in her motion to remand that "Plaintiff cannot determine whether there is a qualified ERISA Plan regarding severance benefits."  P. Mot. Remand Br. 3.[6]  Likewise, in her brief in support of her response to Texas Health's motion to dismiss, she asserts that "Defendants have failed to establish any ERISA benefit plan, merely attaching unauthenticated policies that reference severance."  P. Resp. Br. 2-3.  But she does not allege that the document on which Texas Health relies is in any way inaccurate or misleading.  *See id.*

2

The court first addresses whether the document on which Texas Health relies is, in fact, the severance-benefits policy in place at the time Meyers was laid off.  It then considers whether the policy is an ERISA employee welfare benefit plan.

---

[5]For clarity, the court cites Texas Health's appendix by the date it was filed.

[6]Plaintiff filed her motion to remand and her response to Texas Health's motion to dismiss on the same date.  The court will refer to each brief by the motion or response to which it relates.

In Meyers' state-court petition, she does not refer to a "plan." Instead, she alleges that "Defendants offered to pay Plaintiff half of her annual salary if she resigned before a certain date . . . . Plaintiff accepted this offer and resigned," and "[t]hus, there was a contract between Plaintiff and Defendants." Pet. ¶ 4. In her response brief to Texas Health's motion to dismiss, Meyers contends that "[n]o allegations reference any ERISA benefit plan." P. Resp. Br. 2. The substance of what Meyers terms the "offer" of severance pay appears to be an October 17, 2008 letter from Texas Health, informing Meyers that her position was being eliminated. The letter summarized Meyers' potential benefits, stating: "The [Separation Pay] Policy sets out the requirements for eligibility for separation pay including the requirement to actively pursue reasonable job opportunities during the 60-day notice period." Ds. Aug. 5. 2009 App. 21. A summary of the separation pay policy was attached to the letter and given to Meyers.

In response to Meyers' contention that the Plan document submitted with its pleadings is not authenticated, Texas Health has provided a notarized affidavit from its Chief Human Resources Officer that confirms that the document is an accurate copy.[7]

---

[7]Meyers objects to Texas Health's reliance on this affidavit to support its Rule 12(b)(6) motion. The court is not assessing the authenticity of the Plan document in deciding Texas Health's motion to dismiss; it is instead determining whether it has removal jurisdiction in response to Meyers' motion to remand. The court

Additionally, in the pre-lawsuit correspondence between the parties, Meyers treated the terms and language of the Plan as controlling.  In support of her claim for severance pay, she wrote that her conduct "satisfies the required proper notice as stated in Section 5.2.3 of the Separation Pay Policy," and quoted that section in full.  Ds. Aug. 5, 2009 App. 34.  She stated that, "[b]ased on the above referenced section of the Separation Pay Policy, [Texas Health] would be in breach of what I was promised in the policy if the 50% separation pay was denied."  *Id.*

A plaintiff "cannot circumvent the preemptive reach of ERISA by artful pleading." *Roark v. Humana, Inc.*, 2001 WL 585874, at *1 (N.D. Tex. May 25, 2001) (Fitzwater, J.).  Even where a state-court petition avoids mention of a benefit plan, a court can still consider the substance of the underlying plan to see if ERISA preemption applies.  "Plaintiffs, by avoiding any mention of a 'plan' in the proceedings, could not avoid the fact that the very severance benefits they claimed had been wrongfully denied were disbursed pursuant to a plan." *Wilson v. Kimberly-Clark Corp.*, 254 Fed. Appx. 280, 286 (5th Cir. 2007) (per curiam).  Meyers does not appear to question that the Plan represented Texas Health's

_____

can consider the affidavit evidence for this purpose. *See, e.g.,* *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A Dec. 1981).  Therefore, although Meyers does not seriously challenge the authenticity of the Plan document, the court can consider the affidavit in determining whether it has removal jurisdiction based on ERISA preemption.

separation-pay policy at the time she was laid off; she only
objects on the ground that the document is not "authenticated."
Given the lack of a genuine dispute, and considering all the
relevant evidence, the court holds that Texas Health has satisfied
its burden of demonstrating that the document on which it relies is
the relevant separation-benefits policy, and that this policy
constituted the "offer" to Meyers of severance pay.

3

The court also holds that the Plan constitutes an employee
welfare benefit plan under ERISA.  First, the Plan itself states
explicitly that it is intended to operate as a benefits plan under
ERISA.  Second, similar severance-pay policies have been found to
constitute ERISA plans.  *See, e.g.*, *Hernandez v. Alcatel USA Res.*,
560 F.Supp.2d 528, 533-37 (E.D. Tex. 2006); *Washington v. Elec.
Data Sys. Corp.*, 2003 WL 1233039, at *2-*5 (E.D. Tex. Mar. 17,
2003).  "[S]everance benefits are included in ERISA." *Fort Halifax
Packing Co. v. Coyne*, 482 U.S. 1, 7 (1987).  The court recognizes
that ERISA does not apply to a severance plan if it is merely
"established on an *ad hoc* basis, in response to [a] one time
event," such as a merger between two companies. *McLaren v.
RailAmerica, Inc.*, 2001 WL 366431, at *2 (N.D. Tex. Mar. 21, 2001)
(Fitzwater, J.).  It is settled that "only when there is an
'ongoing administrative program to meet the employer's obligation'
does a plan exist under ERISA." *Peace v. Am. Gen. Life Ins. Co.*,

- 11 -

462 F.3d 437, 440 (5th Cir. 2006) (*quoting Fort Halifax*, 482 U.S. at 11).  But the Plan in this case states that it was established in 1998 and subsequently amended in 2004, and that its purpose is "to provide benefits to Eligible Employees who meet certain conditions and whose jobs are eliminated as a result of . . . restructuring."  Ds. Aug. 5, 2009 App. 3.  It provides for the appointment of a Plan Administrator who oversees benefits eligibility and distribution, as well as a Benefits Committee with the power to amend or alter the Plan.  The court thus concludes that the Plan meets the "ongoing administration" requirements and that it is subject to ERISA.[8]

D

Having determined that the agreement between Texas Health and

---

[8]To determine whether a plan is an ERISA plan, the court determines whether 1) the plan exists, 2) the plan falls within the safe-harbor provision established by the Department of Labor, and 3) the employer established or maintained the plan with the intent to benefit employees. *Wilson*, 254 Fed. Appx. at 283.  Meyers does not challenge (or even mention) any of these factors, and she appears to concede (or at least not to contest) that they are satisfied.  In cases where there is no genuine dispute regarding ERISA's applicability, courts need not perform an in-depth analysis of the three-factor test, but can recognize that ERISA applies to the relevant plan.  *See, e.g.*, *Woods v. Tex. Aggregates, L.L.C.*, 459 F.3d 600, 602 (5th Cir. 2006); *Metro. Life Ins. Co. v. Valdepena*, 2005 WL 2008468, at *2 (W.D. Tex. Aug 17, 2005) (determining in a single paragraph that ERISA applied where "other than her general denial, [plaintiff] has not directly challenged this allegation.").  In this case, the Plan itself demonstrates that it does exist, that no safe harbor applies because the Plan does not involve insurance, and that it was established by Texas Health for the benefit of its employees.  Therefore, it is an ERISA plan.

Meyers was embodied by the Plan, and that the Plan is an ERISA employee welfare benefit plan, the court next considers whether one or more of Meyers' claims seek to enforce her rights under the Plan, and are therefore completely preempted under ERISA § 502. The claims that Meyers asserts in her state-court petition are for breach of contract, fraud, detrimental reliance, and promissory estoppel.

Section 502 authorizes private suits "brought by a participant or beneficiary to recover benefits due to him under the terms of his plan." It is well established that claims for breach of contract due to unpaid benefits under an ERISA plan are preempted under § 502. For example, in a case factually similar to this one, Judge Fish held that the plaintiff's state claims were completely preempted and thus removable. *See Carlyle v. CSX Transp., Inc.*, 2001 WL 210260, at *2-*3 (N.D. Tex. Feb. 28, 2001) (Fish, J.). In *Carlyle* the plaintiff avoided any mention in his pleadings of his former employer's severance plan, but instead alleged only that the suit was for breach of contract based on a promise of separation pay. *Id.* Judge Fish rejected this characterization and "determined that [plaintiff's] suit is, in fact, an action to recover benefits owed or to enforce rights under the terms of an employee benefit plan." *Id.* at *3. "No matter how [plaintiff] characterizes his allegations . . . it is clear that under the law of this circuit, his claims fall within the purview of ERISA." *Id.*

- 13 -

In *Young v. Prudential Insurance Co. of America*, 2007 WL 1234929 (S.D. Tex. Apr. 24, 2007), the plaintiff brought, *inter alia*, a breach of contract claim "based on the defendant's alleged denial of benefits due under an ERISA-governed life insurance contract." *Id.* at *3. The court held that the claim could have been brought under § 502, duplicated the relief provided by ERISA, and was therefore preempted. *Id.* The Fifth Circuit has also recognized that a breach of contract claim seeking benefits due under an ERISA-governed plan is completely preempted under § 502. *See Ellis v. Liberty Life Ins. Co. of Am.*, 394 F.3d 262, 276 n.34 (5th Cir. 2004) (holding that, "for purposes of removal, [plaintiff's] state law breach of contract claim arose under federal law because it is one for the recovery of benefits under [§ 502]").

Meyers presents conflicting arguments throughout her various pleadings as to whether "complete" preemption or "conflict" preemption ought to apply to her claims. In support of her motion to remand, she maintains that "[e]ven if Defendants' severance policy were an ERISA plan, it would only provide an affirmative defense, thus, conflict pre-emption, which does not entitle a party to remove a case to federal court." P. Mot. Remand Br. 3. In response to Texas Health's motion to dismiss, however, she posits that "[e]ven if there was an ERISA benefit plan, Plaintiff's pleading for breach of contract was sufficient to establish a claim

- 14 -

for benefits under the plan."  P. Resp. Br. 3.

The court concludes that Meyers' breach of contract claim is completely preempted under ERISA § 502.  Therefore, the court has removal jurisdiction, and Meyers' motion to remand must be denied.

III

The court now considers Texas Health's motion to dismiss under Rule 12(b)(6).

A

In ruling on a motion to dismiss for failure to state a claim, the court construes the complaint (here, Meyers' state-court petition) in the light most favorable to Meyers, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in her favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).  To survive the motion, Meyers' "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and she must plead "enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009).

"Generally, a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments.  A court is

- 15 -

permitted, however, to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)) (internal citation omitted).   Furthermore, "matters incorporated by reference or integral to the claim . . . may be considered by the district judge without converting the [12(b)(6)] motion into one for summary judgment."   5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 376 (3d ed. 2004).   "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."   *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

As discussed above, Meyers' artful pleading that avoided mention of the Plan does not preclude the court from considering the Plan in making its ruling.   *See Roark*, 2001 WL 585874, at *1. Although the scope of permissible considerations is narrower in the context of a Rule 12(b)(6) motion than in a motion to remand, the court can still consider the Plan in making its determination.

> [E]ven if the plan was not part of the public record, the court had already concluded that the plan existed and fell under ERISA when it denied the Motion to Remand.   It therefore need not have ignored the plan's existence in making its determination on the pleadings, particularly because the court had to ascertain whether it had proper jurisdiction

> over the case . . . . Furthermore,
> Plaintiffs, by avoiding any mention of a
> "plan" in the proceedings, could not avoid the
> fact that the very severance benefits they
> claimed had been wrongfully denied were
> disbursed pursuant to a plan.

*Wilson*, 254 Fed. Appx. at 286.  The court therefore includes the

existence and contents of the Plan in its consideration of the

motion to dismiss.

B

Texas Health contends that, in addition to the complete

preemption of Meyers' breach of contract claim, all of her state-

law claims are either completely preempted or conflict preempted

and must be dismissed.  "In analyzing preemption issues under

§ 514(a), [the court] first ask[s] whether the benefit plan at

issue constitutes an ERISA plan; if it is, [the court] must then

determine whether the state law claims 'relate to' the plan."

*Woods v. Tex. Aggregates, L.L.C.*, 459 F.3d 600, 602 (5th Cir. 2006)

(quoting § 514).  Having determined above that the Plan qualifies

as an ERISA plan and that the breach of contract claim is

completely preempted, the court turns to whether Meyers' other

state-law claims either seek to replicate the remedies available

under § 502 or "relate to" the Plan within the meaning of § 514.[9]

_____

[9]Because at least one of Meyers' claims——breach of
contract——is subject to complete preemption, and because the court
concludes that the remainder all fall under either § 502 or § 514
(as discussed below), identifying the exact type of preemption as
to the other claims is unnecessary.  Meyers will have the option of
repleading her case under § 502.  The substance of that newly-

- 17 -

There is a two-part test for determining when state-law claims "relate to" an ERISA plan:

> (1) whether the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) whether the claims directly affect the relationship among the traditional ERISA entities-the employer, the plan and its fiduciaries, and the participants and beneficiaries.

*Id.* "ERISA includes expansive preemption provisions, see [§ 514], which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." *Aetna Health*, 542 U.S. at 208 (internal quotation marks omitted). While ERISA's preemptive scope is broad, it still requires that the state action not merely "affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100 n.21 (1983).

Considering the specific claims at issue, the court holds that each is preempted under ERISA. "[P]reempted state law includes any state law cause of action as it relates to an employee benefit

---

pleaded claim will not change, nor will it function differently, if it arises from the preemption of multiple claims (for example, breach of contract, fraud, and promissory estoppel) or merely from the breach of contract claim alone. Due to the fact that all of the claims are subject to some form of preemption, and that at least one claim is completely preempted, there is no need to analyze whether the remaining claims should be dismissed under § 502 or § 514. The result would be the same either way.

plan, even if it arises under a general law which in and of itself has no connection to employee benefit plans." *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1218-19 (5th Cir. 1992). How a plaintiff characterizes her claim is not determinative. "[Plaintiff] may characterize her cause of action as arising under the common law of fraud, but she seeks a determination of her eligibility for benefits under an ERISA-governed plan, and she prays for relief specifically provided by § 502(a)(1)(B)." *McGowin v. ManPower Int'l, Inc.*, 363 F.3d 556, 559 (5th Cir. 2004). "Such a claim is completely preempted by ERISA and is removable to federal court." *Id.; see also Reliable Home Health Care, Inc. v. Union Cent. Ins. Co.*, 295 F.3d 505, 516 (5th Cir. 2002) (holding that "given the expansiveness of Section 514" a fraud claim was preempted when the applicable ERISA plan "would have to be examined in order to adjudicate the plaintiffs' claims"). In *Lee v. E.I. DuPont de Nemours & Co.* the court concluded: "We do not decide whether ERISA would provide relief on the facts of this case. Any remedy that does exist, however, must come from within that exclusively federal scheme of pension regulation. We therefore conclude that plaintiffs' state law claim [for fraud and negligent misrepresentation] is preempted by [§ 514]." *Lee v. E.I. DuPont de Nemours & Co.*, 894 F.2d 755, 758 (5th Cir. 1990).

Likewise, Meyers' promissory estoppel and detrimental reliance claims are preempted by ERISA. "[C]laims of promissory estoppel

- 19 -

are not cognizable in suits seeking to enforce rights to pension benefits [under an ERISA plan]." *Degan v. Ford Motor Co.*, 869 F.2d 889, 895 (5th Cir. 1989).  Where a claim of estoppel "addresses [plaintiff's] right to receive benefits under the terms of an ERISA plan," it is subject to preemption.  *McNeil v. Time Ins. Co.*, 205 F.3d 179, 191 (5th Cir. 2000).  "Since the plaintiff's rights [to receive the disputed benefits] are expressly set forth in the ERISA plan, those rights 'relate to' the Plan and ERISA preempts the state law tort claim of detrimental reliance." *Aucoin v. RSW Holdings, L.L.C.*, 476 F.Supp.2d 608, 617 (M.D. La. 2007); *see also Bank of La. v. Aetna U.S. Healthcare, Inc.*, 2003 WL 21634306, at *2 (E.D. La. July 9, 2003) (holding that there was "no reason to except the plaintiff's state law claims for detrimental reliance and misrepresentation from preemption, since they meet both prongs of the [§ 514] test.").

The court holds that Meyers' remaining claims are preempted under ERISA.  Accordingly, it grants Texas Health's motion to dismiss those claims.

IV

When a claim, such as Meyers' breach of contract claim, is completely preempted under § 502, the proper course for a federal court is to hold that it has removal jurisdiction under § 502, dismiss all state-law claims that are preempted under ERISA §§ 502 and 514, and allow the plaintiff to replead any claims that are

- 20 -

available under ERISA's civil enforcement remedy.  *See Cardona*, 2009 WL 3199217, at *9-*10.  When a claim is completely preempted under ERISA, the court typically allows the plaintiff to replead and assert a claim under § 502.  *See, e.g.*, *Drew v. Life Ins. Co. of N. Am.*, 2009 WL 1856604, at *1 (N.D. Tex. June 29, 2009) (Fitzwater, C.J.) ("[T]he court granted the motion to dismiss, but it also granted [plaintiff] leave to re-plead to assert any available claims under ERISA and any pendent state-law claims that might be maintained under the court's supplemental jurisdiction."). Therefore, although the court dismisses Meyers' breach of contract claim as completely preempted, it grants her leave to file an amended complaint that recasts her claim a federal cause of action under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

\* \* \*

Accordingly, for the foregoing reasons, the court denies Meyers' motion to remand, and it grants Texas Health's motion to dismiss.  Meyers is granted 30 days from the date of this memorandum opinion and order to file an amended complaint that pleads a viable claim under ERISA § 502(a)(1)(B).

**SO ORDERED.**

November 9, 2009.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

- 21 -